FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 30, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

LITTLE BUTTE PROPERTY
OWNERS WATER ASSOCIATION,
a Washington nonprofit corporation,

    Plaintiff/Counterclaim-Defendant,

      v.

KEN B. BRADLEY, an individual;

        Defendant/Counterclaimant,

_____

KEN B. BRADLEY,

        Third-Party Plaintiff,

      v.

CHELAN COUNTY; CHELAN
COUNTY SHERIFFS OFFICE;
OFFICER DOMINIC MUTCH;
OFFICER CHRIS EAKLE;
OFFICER MIKE LAMON; and
JANE AND OR JOHN DOE
OFFICERS 1-10,

        Third-Party Defendants.

NO:  2:17-CV-162-RMP

ORDER GRANTING SUMMARY
JUDGMENT MOTIONS

BEFORE THE COURT are motions for summary judgment from Plaintiff and Counterclaim Defendant Little Butte Property Water Association ("Little Butte"), ECF No. 40, and from Third Party Defendants Chelan County, Chelan County Sheriff's Office, and individually named Chelan County Sheriff's Deputies Mike Lamon, Chris Eakle, and Dominic Mutch (the "Chelan County Defendants"), ECF No. 57. Little Butte seeks summary judgment in its favor for injunctive relief and damages against Defendant and Counterclaimant Ken Bradley. ECF No. 40. The Chelan County Defendants seek an order of dismissal with prejudice of Mr. Bradley's counterclaims against Little Butte. ECF No. 57.

Although Mr. Bradley requested oral argument for Little Butte's summary judgment motion, the Court finds that it would not be assisted by oral argument from the parties on the matters raised by that motion and declines to schedule the matter for argument.[1] Consequently, having reviewed all submitted documents related to the motions, and the relevant law, the Court grants both motions for summary judgment, and enters judgment for the Chelan County Defendants and Little Butte.

/ / /

/ / /

---

[1] In addition, Little Butte represents that Mr. Bradley's counsel did not contact Little Butte's counsel "to develop a list of mutually agreeable hearing dates, times, and places," for oral argument as required by Local Rule 7.1(h)(3)(B)(i).

# BACKGROUND

<u>Mr. Bradley's Failure to File Controverting Statements of Facts</u>

The Chelan County Defendants request that the Court accept as undisputed their statement of facts in support of their motion for summary judgment because Mr. Bradley did not file an opposing statement of material fact as required by Local Rule 56.1, nor any exhibits to rebut the Chelan County Defendants' statement of material facts. Similarly, Little Butte argues that the two unsigned, undated, and unsworn declarations that Mr. Bradley submitted with his response to Little Butte's summary judgment motion, one from Mr. Bradley and the other from his counsel, do not comply with 28 U.S.C. § 1746, and do not provide any admissible evidence to controvert Little Butte's statement of material facts in support of its motion for summary judgment.

A party must support an assertion that a fact is genuinely disputed by citation to particular materials in the record, including pleadings, discovery, and affidavits. Fed. R. Civ. P. 56(c).

Rule 56(e), Fed. R. Civ. P., provides:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
(1) give an opportunity to properly support address the fact;
(2) consider the fact undisputed for purposes of the motion;
(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
(4) issue any other appropriate order.

In addition, Local Rule ("LR") 56.1(b) provides:

Any party opposing a motion for summary judgment must file with its responsive memorandum a statement in the form prescribed in (a), setting forth the specific facts which the opposing party asserts establishes a genuine issue of material fact precluding summary judgment. Each fact must explicitly identify any fact(s) asserted by the moving party which the opposing party disputes or clarifies. (E.g.: 'Defendant's fact #1: Contrary to plaintiff's fact #1, . . . .') Following the fact and record citation, the opposing party may briefly describe any evidentiary reason the moving party's fact is disputed. (E.g.: "Defendant's supplemental objection to plaintiff's fact #1: hearsay.")

LR 56.1(d) further provides: "In determining any motion for summary judgment, the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by the record set forth in (b)."

A court resolving a motion for summary judgment "may substitute an unsworn declaration for a sworn affidavit if the declaration complies with 28 U.S.C. § 1746." *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003). Pursuant to 28 U.S.C. § 1746, the declaration must be signed under penalty of perjury. The declarations submitted by Mr. Bradley in support of his response to Little Butte's summary judgment motion, ECF Nos. 66-1 and 66-2, are not signed or dated. In addition, the declarations refer to exhibits that were not attached or otherwise filed, and the declarations themselves do not provide the information necessary to determine whether the declarations were made on Mr. Bradley's and his counsel's personal knowledge. *See* Fed. R. Civ. 56(c)(4).

There has been no request from Mr. Bradley to supplement the record, and the Court finds no justifiable reason to extend Mr. Bradley an opportunity to do so, particularly given that the Court granted him an extended opportunity to respond to the Chelan County Defendants' motion for summary judgment. *See* ECF No. 68. Therefore, the Court deems the facts as presented by the Chelan County Defendants and Little Butte to be undisputed.

Outset of Dispute

Little Butte delivers potable water to 32 residential "user members" and "a few nonmember residential users," as well as two commercial establishments. ECF No. 46 at 2.

Mr. Bradley owns residential property outside of Chelan. The previous owners of the property sought a judicial determination of the property's relationship with the Little Butte water system. *See* ECF No. 46 at 2, 7–10. The result of that litigation was a judgment, issued in 1982, finding that Little Butte is obligated to provide water to the residential property and, in return, the property owners are required to pay the fees and assessments associated with water service from Little Butte. *Id.*

Little Butte's potable water delivery system was developed in approximately 1960 and involves pumping water from Lake Chelan through "a pipeline easement that runs over 3000 linear feet . . . to the [Little Butte] pump station, water filtration

plant, and storage tanks." ECF No. 46 at 2. Mr. Bradley's property is subject to a portion of that pipeline easement.

By summer 2013, the Little Butte water system had begun to deteriorate and fail, including a leak around July 2013 that caused mud to run onto a local highway. On or around September 21, 2013, Little Butte determined that it would need to replace portions of the system.

The replacement work was scheduled to begin on October 4, 2013, with an anticipated nineteen work days needed to complete the project. However, Mr. Bradley inhibited Little Butte's contractor's access to his property on October 4. In a letter that indicates on its face that it was emailed to Little Butte on October 4, Mr. Bradley listed fifteen items that would be required for him to allow access to his property for the work on the pipeline. ECF No. 46 at 12. On October 8, 2013, Mr. Bradley conveyed to Little Butte, through a representative, that he would allow access to his property once he received proof of insurance and a copy of the easement from Little Butte. ECF No. 46 at 3. Little Butte asserts that it provided that documentation to Mr. Bradley on October 10, 2013. ECF Nos. 46 at 3; 50 at 2. However, Mr. Bradley did not allow access, and work on the pipeline replacement stopped on October 8, 2013. ECF No. 46 at 4. Contractor Elite Excavation & Services notified Little Butte that while standing by waiting to complete the work on the pipeline, the company would bill the water association for the costs associated with retaining the specialty equipment in the area. ECF No. 54 at 3.

On approximately October 22, 2013, Little Butte filed a lawsuit against Mr. Bradley in Chelan County Superior Court, and, on October 24, 2013, the court issued a temporary restraining order ("TRO") authorizing immediate access for Little Butte and its contractor to the pipeline and directing removal of "any obstructions such as vehicles, locks or other objects that may interfere with the replacement of that pipeline." ECF No. 42-3 at 2.

The same day that the restraining order was entered, Elite Excavation "re-mobilized" its crews to restart the pipeline. ECF No. 54 at 3. The contractor built an access road along the route of the pipeline across Mr. Bradley's property to facilitate access to a location between Mr. Bradley's property and the shoreline of Lake Chelan, where Elite Excavation was constructing a booster pump. ECF No. 41 at 7–8.[2]

_____

[2] Little Butte repeatedly cites and refers to the "November 21, 2013 Second Declaration of Paul McNally" and the "April 4, 2014 Third Declaration of Paul McNally," *see, e.g.,* ECF No. 40 at 2, but the Court does not find a copy of those declarations in the summary judgment record. *See* LR 56.1(a)("The specific portions of the record relied upon shall be attached to the statement of material facts."). The Court instead finds the October 22, 2013 declaration of Little Butte President Paul McNally filed three separate times at ECF Nos. 46, 47, and 48. However, as noted above, Mr. Bradley admitted the facts as claimed by both Little

On November 11, 2013, Elite Excavation invoiced Little Butte in the amount of $23,868.00 for the costs incurred during the 18-day delay in the pipeline construction "due to the . . . actions caused by Mr. Bradley."  ECF No. 54 at 4.  Little Butte paid the invoice on November 14, 2013.  ECF No. 54 at 4.

Throughout fall 2013, Chelan County Sheriff's Deputies responded to Mr. Bradley's property on five or six occasions in response to claims that Mr. Bradley was interfering with work related to replacing the pipeline.  ECF No. 59-1 at 12–15.  Mr. Bradley also called law enforcement when individuals from Little Butte came to the property.  ECF No. 59-1 at 16.

Before construction, a professional line locator had identified the location of the original Little Butte pipeline across Mr. Bradley's property.  ECF No. 52 at 3.  Elite Excavation followed the line location while performing the pipeline replacement work.  *See* ECF Nos. 42-7 at 2; 43 at 9.  Mr. Bradley and his acquaintances insisted that the contractor's employees were digging in the wrong place.  ECF Nos. 53 at 2; 55 at 2.

On approximately November 19, 2013, Mr. Bradley refused the contractor access to continue work on the remaining feet of pipeline crossing Mr. Bradley's

Butte and the Chelan County Defendants "without controversy."  LR 56.1(d).  Moreover, Little Butte provided the missing declaration to the Court, in the context of pre-trial motions in limine.  *See* ECF No. 88 (Exhibit 209).

property.  ECF Nos. 41 at 8–9; 42-7 at 2.  On November 20, 2013, Elite Excavation called for a "line locate" to identify Mr. Bradley's personal utilities in order to avoid them while replacing the pipeline across his property.  ECF No. 41 at 9.  However, Mr. Bradley refused the line locator access to his property.  *Id.*

 The next day, Little Butte returned to Chelan County Superior Court to move for an order finding Mr. Bradley in contempt for violating the temporary injunction, arguing that "time [was] of the essence" in completing the work because "the onset of winter could stop construction."  ECF No. 42-7 at 3; *see also* ECF No. 42-6 at 1– 2.  On November 25, 2013, the Chelan County Court Commissioner found Mr. Bradley in contempt of the TRO; ordered the Chelan County Sheriff to incarcerate Mr. Bradley, and any other individual blocking access to Mr. Bradley's property, until Mr. Bradley allowed access to his property; and sanctioned Mr. Bradley in the amount of the reasonable attorney's fees that Little Butte incurred in moving for contempt, $2000.  ECF No. 42-9.

On August 15, 2014, the Chelan County Superior Court entered judgment against Mr. Bradley and in favor of Little Butte for $23,868 for the costs resulting from a delay in construction, plus attorney fees and taxable costs in the amount of $2,665.  ECF No. 42-11.  Shortly thereafter, the same court ordered supplemental proceedings in the form of a judgment debtor exam to allow Little Butte to ascertain what property Mr. Bradley may have had that could satisfy the judgment.  ECF No. 42-12.

Execution of Civil Warrant

On approximately September 26, 2014, when Mr. Bradley did not appear at the judgment debtor exam, upon motion by Little Butte, the superior court issued a bench warrant for Mr. Bradley, setting bail at $27,000, and awarding Little Butte $702.50 for additional attorney fees. ECF Nos. 42-14; 42-15.

The evidence supports that Chelan County law enforcement officers, pursuant to their "experience and training," contact an independent agency, RiverCom, before serving a warrant to verify that the warrant still is valid. ECF Nos. 60 at 2; 61 at 2; 62 at 2. RiverCom does not indicate to officers whether the warrant is civil or criminal in nature. *Id*. After receiving confirmation that the warrant was still valid, Chelan County Deputies Chris Eakle, Dominic Mutch, and Mike Lamon executed the warrant on October 13, 2014. ECF Nos. 60 at 2; 61 at 2; 62 at 2.

Deputies Eakle, Mutch, and Lamon parked their patrol vehicles at the end of Mr. Bradley's long gravel driveway "for officer safety purposes[.]" ECF Nos. 60 at 2–3; 61 at 2–3; 62 at 2–3. The deputies walked around Mr. Bradley's residence before they knocked and announced their presence. *Id*. Deputy Mutch recalled, "While in the process of determining whether there were any officer safety issues, I saw Mr. Bradley at the east end of the residence in keeping with my experience and training[.]" ECF No. 61 at 3. When Deputy Mutch shined his light into Mr.

Bradley's residence, Mr. Bradley "didn't say anything at that point and just stepped away from the window." *Id.*

Having observed Mr. Bradley inside the residence, the deputies knocked on the door, announced their presence, and advised Mr. Bradley that they had a warrant. ECF Nos. 60 at 3; 60-1 at 3. They continued to knock and attempt to communicate with Mr. Bradley for approximately twenty (according to Deputy Mutch) to thirty minutes (according to Deputy Eakle). ECF Nos. 60-1 at 3; 61-1 at 4; *see also* ECF No. 60 at 3 (Deputy Eakle recalled, "Because we knew that Mr. Bradley was inside we knocked on the residence for an extended period of time.").

The three deputies entered Mr. Bradley's residence, after receiving their supervisor's authorization. ECF Nos. 60 at 3; 60-1 at 3; 62 at 3. The door that Deputy Eakle forced open to enter the house had been blocked by a couch. ECF Nos. 61 at 3; 61-1 at 4, 9. Mr. Bradley was lying face-up in the hallway. ECF Nos. 60-1 at 3; 61 at 3; 62 at 3. Although the deputies believed Mr. Bradley to be pretending to be unconscious, they examined Mr. Bradley to rule out the possibility that he was having a medical emergency. ECF Nos. 60 at 4; 60-1 at 3; 61 at 3. Mr. Bradley did not display any difficulty breathing. ECF Nos. 61 at 3; 62 at 3. Deputy Lamon performed a sternum rub to see whether Mr. Bradley would react or wake up. ECF No. 62 at 4. Deputy Lamon also performed a "drop test" in which he lifted Mr. Bradley's arm up over Mr. Bradley's face and dropped the arm. *Id.* The rationale of the test is that an unconscious person's arm will drop on his face. *Id.* Mr. Bradley

moved his arm each time Deputy Lamon dropped it.  *Id.*; *see also* ECF No. 60 at 3.

Deputy Eakle also observed Mr. Bradley flinch after Deputy Mutch made a loud

noise.  ECF No. 60 at 4.

The sternum rub and the arm drops were the only physical contact the

deputies had with Mr. Bradley.  ECF Nos. 60 at 3; 62 at 4.  They did not display or

deploy their Tasers, or their guns, at any time during the interaction.  ECF Nos. 60 at

3; 61 at 3.

Despite concluding that Mr. Bradley was faking his condition, the deputies

summoned medical assistance, who transported Mr. Bradley to the hospital.  ECF

Nos. 60 at 4; 62 at 4.  Deputy Eakle accompanied Mr. Bradley to the hospital,

where, according to Deputy Eakle, the attending physician told the deputy that "he

did not have time to deal with people faking it and Mr. Bradley was to be released."

ECF No. 60 at 4.  When the medical examination was completed without any

problems found, Deputy Eakle transported Mr. Bradley to the Chelan County Jail.

*Id.*; *see also* ECF No. 60-1 at 3.

Based on Mr. Bradley's deposition, Mr. Bradley denies knowing that there

was law enforcement on his property until he was at the hospital.  *See* ECF No. 59-1

at 19–22.  Mr. Bradley asserted at deposition that he thought people had come onto

his property the night of October 13, 2014, to attack him.  ECF No. 59-1 at 20.  He

recalled peering through blinds on a sliding door to find a "bright light shined in his

face" and hearing someone yell "Bradley, we're going to get you."  ECF No. 59-1 at

19–20.  He described next hearing "pounding all around the house," and then regaining consciousness briefly on the floor of his house, unable to talk, while people who had "gained access to his house . . . kept on inflicting pain on [him]." ECF No. 59-1 at 20–21.  Plaintiff recalled a "sharp jolt" of pain as if he were "tasered or something."  ECF No. 59-1 at 21.  Mr. Bradley recalled that he did not speak to the law enforcement officers and denies that he was able to see throughout the encounter.  ECF No. 59-1 at 23–24, 27.

However, Mr. Bradley alleges that his only awareness of who was at his house, or the number of people present, on October 13 is based on his review of the police reports.  ECF No. 59-1 at 25.  From the time Mr. Bradley saw somebody outside of his house, Mr. Bradley attests that his next recollection of any visual memory was seeing the lit up instrument panel from "the back of a police vehicle[.]" ECF No. 59-1 at 26.

Relevant Procedural History

On January 9, 2017, shortly before this matter was removed to this Court, Mr. Bradley sought to vacate the August 15, 2014 final judgment for the costs resulting from a delay in construction on the ground that service of process was defective. The superior court granted the motion and vacated the judgment, specifying that "[a]ll subsequent orders are void and unenforceable."  ECF No. 70-1 at 2.  Little Butte does not dispute that the service of process for the complaint that the water association filed on October 22, 2013, was defective.  ECF No. 69 at 6.  However,

Little Butte maintains that Mr. Bradley received sufficient notice of the TRO and that the TRO, entered nine months before the judgment that was vacated, remains in effect. ECF No. 69 at 6.

On January 17, 2017, Little Butte amended its complaint in Chelan County Superior Court, seeking a permanent injunction against Mr. Bradley, an award of $23,868 in delay damages, and a judgment memorializing the $2000 in attorney fees that the superior court had ordered when it found Mr. Bradley in contempt on November 26, 2013. ECF No. 1-1 at 19–25. On February 10, 2017, Mr. Bradley answered Little Butte's complaint and filed counterclaims against Little Butte and cross-claims against the Chelan County Defendants. In Mr. Bradley's counter- and cross-claim complaint, he alleged that the deputies' pounding on the door "triggered a flash back to his service in the military."[3] ECF No. 7 at 12. Mr. Bradley also alleges that he was bruised during his arrest. *Id.*

Mr. Bradley has not requested any training files or other training documents from the Chelan County Defendants. *See* ECF No. 59 at 2. Mr. Bradley did retain as an expert an individual named Susan Peters,[4] who opined that the reasonable standard of training for Washington law enforcement officers would be to

---

[3] Mr. Bradley was honorably discharged from service in the U.S. Army and receives no benefits related to his service. ECF No. 59-1 at 7.

[4] Ms. Peters' credentials and work experience are not in the record.

differentiate between civil and criminal warrants.  ECF No. 59-1 at 36.  Ms. Peters further opined that the law enforcement officers involved in arresting Mr. Bradley should have known that they could not forcibly enter a residence to serve a civil warrant.  *Id.* at 42.  However, Ms. Peters acknowledged that she was not aware of whether the Washington State Patrol Academy trains officers about whether they can forcibly enter a residence to serve a civil warrant, and she did not know whether any county in Washington other than King County trains its offers regarding the legality of forcing entry to serve a civil warrant.  *Id.* at 37–40.

With respect to Little Butte, Mr. Bradley denied that any documents submitted by Little Butte in its lawsuit originating in state court showed the location of any easement across Mr. Bradley's property.  ECF No. 7 at 2.  Mr. Bradley also denied a role in Little Butte incurring costs of $2500 per day during the construction delay. *Id.*  Mr. Bradley claims that Little Butte damaged his property "in some areas over 120 feet wide" while installing a new line "between 20 to 80 feet away from the original line."  *Id.* at 8.  Mr. Bradley asserts that Little Butte did not replace fencing that its contractor tore down, and that the work on Mr. Bradley's property resulted in slope damage and weed problems that have not been repaired.  Mr. Bradley alleges that Little Butte was aware that it had defectively served the original complaint.  *Id.* at 10.  In addition, Mr. Bradley asserts that Little Butte injured him by refusing to provide water service to Mr. Bradley's property.  *Id.* at 11.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. If the moving party meets this challenge, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." *Id.* at 324 (internal quotations omitted). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

In deciding a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

### *Mr. Bradley's Claims against the Chelan County Defendants*

As a preliminary matter, Mr. Bradley concedes that dismissal of his claim for negligent infliction of emotional distress is proper. ECF No. 71 at 2. His remaining claims against the Chelan County Defendants arise under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments and under Washington state law: (1) excessive force; (2) *Monell* liability for failure to train; (3) *Monell* liability for a custom or policy that permits excessive force and/or deliberate indifference to the rights of individuals with mental health issues; (4) negligence; and (5) intentional infliction of emotional distress. ECF No. 7.[5]

Parties can seek relief under 42 U.S.C. § 1983 against any "person" who, "under color of state law, deprives another of rights protected by the U.S.

---

[5] The Court previously dismissed Mr. Bradley's claims against the Chelan County Defendants and Little Butte based on the Washington State Constitution. ECF No. 65 at 22.

Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Mr. Bradley asserts that the Chelan County Defendants violated his constitutional rights, and bases his state law claims on the same factual allegations that underlie his section 1983 claims.

Section 1983: Excessive Force by the Deputies in their Individual Capacity

The Fourth Amendment of the U.S. Constitution proscribes "unreasonable" searches and seizures, and that proscription applies to state officials through the Fourteenth Amendment. U.S. Const. amends. IV and XIV; *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012).

The reasonableness of an arrest or other seizure is evaluated in terms of whether the involved officers' use of force was "objectively reasonable in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 398 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97; *Fisher v. City of San Jose*, 558 F.3d 1069, 1081 (9th Cir. 2009) (en banc).

Mr. Bradley's only allegation of force used against him in the course of his arrest was that the officers' knocking on the door triggered psychological symptoms related to his prior military service. The undisputed facts, even with all reasonable inferences drawn in favor of Mr. Bradley, indicate that the only time that any of the deputies placed their hands or otherwise had contact with Mr. Bradley was when they were trying to determine whether he actually was unconscious. In these facts, the Court finds no material question barring a conclusion that the deputies' actions with respect to the use of force were objectively reasonable at the time. *See Graham*, 490 U.S. at 397. Therefore, Mr. Bradley's claim of excessive force against the individual deputies fails.

Section 1983: Excessive Force against Chelan County and the Chelan County Sheriff's Office based on *Monell* Liability

To successfully advance a claim under section 1983 against Chelan County or the Chelan County Sheriff's Office, Mr. Bradley must show that an agency policy or custom caused his complained-of constitutional injury. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690–91 (1978) (determining that a local government entity may be held liable for a civil rights violation caused by a law enforcement officer upon a showing that the entity's decision makers adopted a policy, custom, or practice that caused the violation and/or acted with deliberate indifference to known consequences, and the indifference was a moving force behind the deprivation). A theory of *respondeat superior* or vicarious liability is not

available against municipal or other local government entities under section 1983. *Id.* at 694; *see also Canton v. Harris*, 489 U.S. 378, 385 (1989) (allowing municipal liability on the basis of a failure to train only if policymakers "were on actual or constructive notice of the need to train"); *Collins*, 503 U.S. at 120–21.

The Chelan County Defendants argue that Mr. Bradley's claims fail on two bases. *See* ECF No. 72 at 8. First, Mr. Bradley does not refer to any training that the deputies at issue received, much less show that any such training was deficient. *Id.* Second, Mr. Bradley did not show that Chelan County was deliberately indifferent to the need to train subordinates or that the lack of training caused a constitutional harm or deprivation of rights. *Id.*

Mr. Bradley responds that "[t]he specifics as to how Chelan county [sic] failed to train its officers are not needed when they are so apparent from the facts." ECF No. 71 at 3. Mr. Bradley argues that the failure to train Chelan County officers to differentiate between civil and criminal warrants or failure to implement a system that automatically differentiates between the two types of warrants for law enforcement officers rises to the level of deliberate indifference. ECF No. 71 at 3–4.

Section 10.31.040 of the Revised Code of Washington ("RCW") allows law enforcement officers, after announcing their "office and purpose," to forcibly enter a dwelling to execute a criminal arrest warrant. In 2004, the Washington State Supreme Court interpreted RCW 10.31.040 to mean that officers may not forcibly

enter dwellings to execute civil warrants.  *State v. Thompson*, 151 Wn.2d 793 (Wash. 2004).

However, Mr. Bradley does not offer any authority or factual support for premise that any "failure" by the deputies to adhere to *Thompson* is based on the County and Sheriff's Office Defendants' policies or failure to train.  Most importantly, Mr. Bradley presents no theory as to how failure to train officers to abide by the Washington Supreme Court's ruling in *Thompson*, even if there were facts to support that proposition, caused a Fourth Amendment violation.  Federal precedent applying the Fourth Amendment does not prohibit forcible entry into a house to execute a civil arrest warrant; the case law does not differentiate between the civil versus criminal nature of a bench warrant.  *United States v. Gooch*, 506 F.3d 1156, 1158–59 (9th Cir. 2007), *cert. denied*, 552 U.S. 1331 (2008) (finding that an arrest warrant by itself gives the government authority to enter a residence if "there is reason to believe the suspect is within"); *see also Payton v. New York*, 445 U.S. 573, 603 (1980) (an arrest warrant suffices for entry by the police into the home of the person they wish to arrest).  Washington law, too, recognizes that issuing civil warrants for the arrest of defendants who do not appear in court comports with the Fourth Amendment.  *See State v. Sleater*, 194 Wn. App. 470, 476 (Wash. App. Div. 3, 2016).

Mr. Bradley has failed to make a prima facie case for his *Monell* claims. Therefore, the Court grants Chelan County Defendants' motion for summary judgment on Mr. Bradley's section 1983 claims, in their entirety.

Negligence

In defense of his negligence claim against the Chelan County Defendants, Mr. Bradley writes, cryptically:

> Bradley does not have to recall events if all the events were based on a trespass to his property and the police documented the damage. While he may not have had substantial physical harm to himself, his house was damaged, and his privacy was unlawfully invaded.

ECF No. 71 at 9.

The elements of a negligence claim include duty, breach, causation, and injury. *Keller v. City of Spokane*, 146 Wn.2d 237, 242 (Wash. 2002). Liberally construing Mr. Bradley's negligence claim, his theory of liability seems to mirror the theory underlying his failure-to-train and deliberate indifference claims under *Monell*, namely that the Chelan County Defendants were *per se* negligent in forcibly entering Mr. Bradley's house to execute a civil warrant. However, Mr. Bradley fails to provide any authority to support that such actions are *per se* negligent or any authority to define the duty that the deputies allegedly breached. Nor does Mr. Bradley provide any factual support for his assertion that there was damage to his property from the deputies' actions. Accordingly, Mr. Bradley's negligence claim is dismissed.

<u>Intentional Infliction of Emotional Distress</u>

Mr. Bradley argues that the deputies "engaged in extreme and outrageous conduct by unlawfully trespassing on Mr. Bradley's home" and "[b]reaking down the doors in his house and hauling him off to prison without any proper authority." ECF No. 71 at 9. He continues, "There is no objective reason for them to have entered his house." *Id.*

However, Washington's tort of intentional infliction of emotional distress, or outrage, requires proof of much more than Mr. Bradley's conclusory pronouncements offer. Three elements are essential: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn.2d 192, 195–96 (Wash. 2003). Liability attaches only to conduct that is "*so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community*." *Grimsby v. Samson*, 85 Wn.2d 52, 59 (Wash. 1975) (internal quotation omitted) (emphasis in original).

Here, the deputies knocked on Mr. Bradley's door and waited an extended amount of time before entering, then summoned medical assistance, despite suspecting Mr. Bradley of faking unconsciousness, before placing Mr. Bradley under arrest pursuant to what the deputies had been informed and reasonably believed was a valid warrant. Such actions are not outrageous in character nor

extreme in degree in the context of execution of arrest warrants.  Moreover, Mr. Bradley failed to substantiate any symptoms of severe emotional distress. Therefore, Mr. Bradley's claim of outrage is dismissed.

### Little Butte's Claims for Injunctive Relief and Damages

"A suit for an injunction is an equitable proceeding addressed to the sound discretion of the trial court, to be exercised according to the circumstances of each case." *Steury v. Johnson*, 90 Wn. App. 401, 405 (Wash. App. Div. 3, 1998).  To secure a permanent injunction, a party must show that: (1) it has "a clear legal or equitable right"; (2) it has "a well-grounded fear of immediate invasion of that right"; and (3) "the acts complained of are either resulting in or will result in actual and substantial injury to him." *SEIU Local 925 v. Univ. of Wash.*, 2018 Wash. App. LEXIS 1332 at *18 (Wash. App. Div. 1, Jun. 11, 2018) (citing *Fed. Way Family Physicians, Inc. v. Tacoma Stands Up for Life*, 106 Wn.2d 261, 265 (Wash. 1986)).

The evidence in the summary judgment record establishes that the easement allows Little Butte's right of access to Mr. Bradley's property.  Mr. Bradley's repeated interference with Little Butte's access to the property in fall 2013, even after the superior court issued a temporary restraining order, supports Little Butte's assertion that Mr. Bradley again may invade its right to access the property in the future.  Furthermore, the record shows that Mr. Bradley intentionally interfered with Little Butte's access to the easement, and that it was Mr. Bradley's intentional

interference that resulted in $23,868 in damages incurred during the 18-day delay.[6] Therefore, an injunction is appropriate.

### *Mr. Bradley's Claims against Little Butte*

<u>Section 1983: Fourth and Fourteenth Amendments</u>

Mr. Bradley also named Little Butte as a defendant in his section 1983 claims, alleging that Little Butte improperly obtained a bench warrant from Chelan County Superior Court, "acted in conjunction with the local sheriff's office to serve" Mr. Bradley, and "facilitated obtaining a civil bench warrant for Mr. Bradley's arrest despite knowing or should have known [sic] the court did not have jurisdiction." ECF No. 1-1 at 43. Mr. Bradley's allegations continued, "Under this warrant, [Little Butte] condoned the actions of the officers who entered Mr. Bradley's residence despite not having authority under a civil bench warrant." ECF No. 1-1 at 44.

For a private actor to be liable under section 1983, Little Butte must have "engaged in state action under color of law and thereby deprived a plaintiff of some right, privilege, or immunity protected by the Constitution or the laws of the United States." *Brunette v. Human Soc'y*, 293 F.3d 1205, 1209 (9th Cir. 2002) (citing *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc)). "Whether a

---

[6] The Court notes that Little Butte abandons in its summary judgment motion its claim for the $2000 in attorney fees raised by the January 17, 2017 amended complaint.

private party engaged in state action is a highly factual question." *Id.* (citing *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983)). To test whether a private party is engaged in "joint action" with a government entity or its agents, courts ask whether the private party was a "willful participant" in any activity that deprived an individual of his constitutional rights and whether the private party's actions were "inextricably intertwined" or demonstrated "substantial cooperation" with the government entity or its agents. *See id.* at 1211 (internal quotations omitted).

Mr. Bradley neither sufficiently pleaded nor sufficiently defended at summary judgment his claim that Little Butte acted under color of law to deprive him of a constitutional right. There is a complete lack of evidence among the undisputed facts that Little Butte was inextricably intertwined with the Chelan County Defendants or willfully participated in any of their actions. Moreover, the Chelan County Defendants' actions themselves do not amount to constitutional violations, as discussed above. Therefore, Mr. Bradley's section 1983 claims against Little Butte fail as a matter of law.

<u>State Destruction of Property, Trespass, and Condemnation Claims</u>

Washington's trespass statute provides for liability for three types of conduct by a person who goes onto the land of another: "(1) removing valuable property from the land, (2) *wrongfully* causing waste or injury to the land, and (3) *wrongfully* injuring personal property or real estate improvements on the land." *Ofuasia v. Smurr*, 198 Wn. App. 133, 147 (Wash. App. Div. 2, 2017) (quoting *Clipse v.*

*Michels Pipeline Constr., Inc.*, 154 Wn. App. 573 (Wash. App. Div. 1, 2010) (emphasis in original) (internal quotation marks removed)); *see also* Revised Code of Washington ("RCW") 4.24.630(1). Under the statute, "a person acts 'wrongfully' if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act." RCW 4.24.630(1).

Mr. Bradley has not come forth with any evidence at summary judgment to support that Little Butte or its agents came onto or damaged his property "knowing, or having reason to know" that they lacked authorization to so act. Nor has he provided any evidence substantiating his claimed damages. Consequently, summary dismissal of Mr. Bradley's claim under Washington's trespass statute is appropriate.

Accordingly, **IT IS HEREBY ORDERED**:

1. Little Butte's Motion for Summary Judgment, **ECF No. 40**, is **GRANTED**.

2. The Chelan County Defendants' Motion for Summary Judgment, **ECF No. 57**, is **GRANTED**.

3. Judgment shall be entered for Little Butte, against Mr. Bradley, in the amount of **$23,868.00 in damages**, in the amount paid by Little Butte to its contractor for the 18-day construction delay caused by Mr. Bradley's actions, ECF No. 54 at 3–4, and undisputed by Mr. Bradley with any evidence to raise a genuine issue of material fact.

4. The Court further grants Little Butte equitable relief in the form of a permanent injunction barring Mr. Bradley from interfering with Little Butte's exercise of its easement in the future.

5. With respect to Mr. Bradley's claims against Little Butte and the Chelan County Defendants, judgment shall be entered for Little Butte and the Chelan County Defendants, and against Mr. Bradley, without any costs to any party.

6. All pending hearings, including the trial date, and accompanying deadlines in this matter are **STRICKEN**.  Any remaining motions are **DENIED AS MOOT.**

The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close this case**.

**DATED** July 30, 2018.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge